UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DANIKA CANTU,

               Plaintiff,

v.

CREDIT ACCEPTANCE CORPORATION and KOHN LAW FIRM S.C.,

               Defendants.

Case No. 23-CV-520-JPS

**ORDER**

    Before the Court is Defendants Credit Acceptance Corporation ("CAC") and Kohn Law Firm S.C.'s ("Kohn," and with CAC, "Defendants") motion to compel arbitration and dismiss this lawsuit or, in the alternative, to stay the proceedings. ECF No. 17. For the reasons set forth below, the Court will grant the motion and dismiss the action without prejudice.

**1.    BACKGROUND**

    This action arises from Plaintiff Danika Cantu's ("Cantu") purchase of a vehicle in 2017. ECF No. 3 at 13. Upon selecting a vehicle, Cantu and the dealership entered into a retail installment contract (the "Contract"), which was assigned to CAC. ECF No. 19 at 1–2; ECF No. 19-1. Cantu began making payments, but in October 2017, stopped. ECF No. 3 at 13. Cantu tried to catch up on the loan throughout 2018 and 2019. *Id.* Cantu alleges that, in 2020, she contacted CAC to voluntarily surrender the car. *Id.* CAC agreed to accept the voluntary surrender, but never picked up the car. *Id.* at 14. Instead, CAC told Cantu that, by February 1, 2022, she could pay CAC

$5,000 in full satisfaction of the loan and own the car outright. *Id.* Cantu was not able to make this payment. *Id.*

Cantu thereafter attempted to trade in the car and purchase a new one, but she needed a payoff letter from CAC to do so. *Id.* CAC would not give Cantu a payoff letter. *Id.* Cantu asked CAC if the $5,000 deal was still available, and CAC directed Cantu to call Kohn to discuss a resolution. *Id.* Cantu spoke with an attorney at Kohn, who told her that the matter could not be resolved for $5,000 and that Cantu owed $20,000. *Id.* The attorney told Cantu that Kohn and CAC had a judgment against her and would begin garnishing her wages. *Id.* The attorney requested Cantu's budget information and informed her she would have to pay $500 per month. *Id.*

Cantu did not agree to pay $500 per month, and CAC, through Kohn, filed a civil lawsuit seeking a money judgment against Cantu in Walworth County Circuit Court on June 1, 2022 (the "State Court Action"). *Id.* at 15; ECF No. 20 at 2. On September 22, 2022, CAC moved for a default judgment against Cantu, after trying to serve her personally (at an address at which she has never lived or known anyone) and by publication. ECF No. 3 at 15. On October 10, 2022, default judgment was entered against Cantu in the State Court Action. *Id.* On November 28, 2022, CAC filed the transcript of the judgment in the State Court Action in the Fond du Lac County Circuit Court. ECF No. 20 at 2.

On December 21, 2022, Cantu, through counsel, moved to reopen the State Court Action, and included a set of proposed counterclaims. *Id.* at 3. CAC stipulated to reopening the matter and requested the judgment be vacated and the matter dismissed with prejudice. *Id.*; ECF No. 20-11. At Cantu's counsel's urging, the State Court Action was instead dismissed without prejudice. *Id.*; ECF No. 20-11.

Cantu then filed this action on April 24, 2023 seeking, inter alia, compensatory and punitive damages. ECF No. 1; ECF No. 3 at 20–21. Cantu alleges violations of the Fair Debt Collection Practices Act against Kohn and violations of state consumer transactions law against both Kohn and CAC. ECF No. 3 at 15–21. The state law claims raise deficiencies with the collection process that Defendants initiated in the State Court Action, as well as allegations regarding the Kohn lawyer's representations to Plaintiff and CAC's refusal to provide a payoff letter. *Id.*

On June 26, 2023, Defendants filed the instant motion to compel arbitration. ECF No. 17. Defendants argue that the Contract contains an "unambiguous written arbitration clause." ECF No. 18 at 1. First, the Contract's first page contains a bold-faced notice of the arbitration clause (the "Arbitration Clause") with a black border around it, which states:

> **ARBITRATION**: This Contract contains an Arbitration Clause that states You and We may elect to resolve any dispute by arbitration and not by court action. See the Arbitration Clause on Page 5 of this Contract for the full terms and conditions of the Arbitration Clause. By initialing below, you confirm that you have read, understand and agree to the terms and conditions in the Arbitration Clause.

ECF No. 19-1 at 2 (emphasis in original). Cantu initialed underneath the notice. *Id.*[1] In turn, the Contract contains the Arbitration Clause itself, which states, in pertinent part:

> **Your Right to Reject: If You don't want this Arbitration Clause to apply, You may reject it by mailing Us at [mailing address omitted] a written rejection notice . . . . If You reject this Arbitration Clause, that will not affect any other**

---

[1] Cantu consented to the use of electronic signatures and acknowledged that she was given the opportunity to review a paper version of the Contract that she signed using electronic signatures. ECF No. 19-2.

**provision of this Contract or the status of Your Contract. If You don't reject this Arbitration Clause, it will be effective as of the date of this Contract.**

A "Dispute" is any controversy or claim between You and Us arising out of or in any way related to this Contract, including, but not limited to, any default under this Contract, the collection of amounts due under this Contract, the purchase, sale, delivery, set-up, quality of the Vehicle, advertising for the Vehicle or its financing, or any product or service included in this Contract. "Dispute" shall have the broadest meaning possible, and includes contract claims, and claims based on tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories. Notwithstanding the foregoing, "Dispute" does not include any individual action brought by You in small claims court or Your state's equivalent court, unless such action is transferred, removed or appealed to a different court. "Dispute" does not include any repossession of the Vehicle upon Your default and any exercise of the power of sale of the Vehicle under this Contract or any individual action by You to prevent Us from using any such remedy, so long as such individual action does not involve a request for monetary relief of any kind. In addition, "dispute" does not include disputes about the validity, enforceability, coverage or scope of this Arbitration Clause or any part thereof (including, without limitation, the Class Action Waiver described in the sixth paragraph of this Arbitration Clause, the last sentence of the seventh paragraph of this Arbitration Clause and/or this sentence); all such disputes are for a court and not an arbitrator to decide. However, any dispute or argument that concerns the validity or enforceability of the Contract as a whole is for the arbitrator, not a court, to decide.

[. . . .]

Either You or We may require any Dispute to be arbitrated and may do so before or after a lawsuit has been started over the Dispute or with respect to other Disputes or counterclaims brought later in the lawsuit. If You or We elect to arbitrate a Dispute, this Arbitration Clause applies . . . .

> [. . . .]
>
> It is expressly agreed that this Contract evidences a transaction in interstate commerce. This Arbitration Clause is governed by the [Federal Arbitration Act] and not by any state arbitration law.

*Id.* at 6 (emphasis in original). Cantu initialed underneath the Arbitration Clause, *id.*, and she did not reject the Arbitration Clause. ECF No. 19 at 1.

**2.   ANALYSIS**

The Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.*, "is a congressional declaration of a liberal federal policy favoring arbitration agreements." *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 730–31 (7th Cir. 2005) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Accordingly, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 731 (quoting *Moses H. Cone*, 460 U.S. at 24–25). "Under the [FAA], arbitration may be compelled if the following three elements are shown: [(1)] a written agreement to arbitrate, [(2)] a dispute within the scope of the arbitration agreement, and [(3)] a refusal to arbitrate." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005) (citing 9 U.S.C. § 4 and *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909–10 (7th Cir. 1999)).

Cantu does not dispute the validity of the arbitration agreement or that her claims in this case fall within its scope. Instead, she argues that Defendants waived their right to compel arbitration by choosing to litigate a dispute that is covered by the Arbitration Clause in the State Court Action. ECF No. 20 at 1, 3–5.

"A waiver can be express or implied through action." *Brickstructures, Inc. v. Coaster Dynamix, Inc.*, 952 F.3d 887, 891 (7th Cir. 2020) (citing *Kawaski*

*Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 994 (7th Cir. 2011)). "[T]he question is whether 'based on all the circumstances, the party against whom the waiver is to be enforced has acted inconsistently with the right to arbitrate.'" *Id.* (quoting *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 637 (7th Cir. 2002)). Because federal policy favors arbitration, "parties asserting waiver bear a 'heavy burden' and courts should not 'lightly infer' waiver." *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*, 969 F.2d 585, 590 (7th Cir. 1992).

In Cantu's view, Defendants "plainly invoked the judicial forum" when they sued her civilly for a money judgment, a dispute covered by the Arbitration Clause, in Walworth County Circuit Court. ECF No. 20 at 4. They further "took steps to try to limit Cantu's post-judgment rights" using the judicial forum and, when Cantu appeared through counsel, did not move to compel arbitration of her proposed counterclaims. *Id.* Instead, they moved for dismissal with prejudice, a decision "on the merits of all claims in the case," further evincing their intent to invoke the judicial forum. *Id.* Finally, they invoked not only the Walworth County Circuit Court, but also the Fond du Lac County Circuit Court. *Id.* This conduct, Cantu argues, combined with the fact that the right to arbitrate was only raised now, years later, and in a separate action initiated by her, amounts to waiver. *Id.*

According to Defendants, however, there is a distinction between waiver of the right to arbitrate after "substantial participation in a lawsuit" involving one set of claims, and waiver of the right to arbitrate a separate set of claims in a second, independent lawsuit. ECF No. 21 at 3.

The case law recognizes this distinction. In *Kawaski*, for example, the dispute originated with several cases, one filed by the plaintiff and two filed by the defendant, which resulted in a settlement agreement that contained

Page 6 of 11
Case 2:23-cv-00520-JPS    Filed 08/25/23    Page 6 of 11    Document 22

both a subordination clause and an arbitration clause. 660 F.3d at 991–92 & n.1. Thereafter, the plaintiff filed a new action in the Eastern District of Texas, the forum of the original case initiated by the plaintiff, compelling the defendant to comply with the settlement agreement. *Id.* at 992. In response, the defendant argued that the matter should be arbitrated. *Id.* The Texas court agreed it lacked subject matter jurisdiction, the matter was appealed, and then the plaintiff initiated a separate action in the Southern District of Illinois related to the subordination clause. *Id.* at 992–93. The Seventh Circuit, overturning the district court, held that the defendant had neither waived its right to arbitrate through its participation in the Texas litigation nor exhibited undue delay in seeking arbitration. *Id.* at 994, 995–96. This was so, the court reasoned, because the defendant did not initiate the Texas case, did not submit a motion to the Texas court that would "resolve[] the dispute" on the merits, and consistently mentioned its desire to arbitrate in the "current litigation," which negated any allegations of delay as to the prior litigations. *Id.* at 995–96.

Similarly, in *Wheeler v. Cavalry SPV I, LLC*, the court held that the right to compel arbitration was not waived even where *the defendant* had initiated a prior small claims action against the plaintiff because the prior action was "distinct" from the action filed by the plaintiff. 593 F. Supp. 3d 878, 884 (W.D. Wis. 2022) (citing *Kawaski*, 660 F.3d at 996; *Hodson v. Javitch, Block & Rathbone, LLP*, 531 F. Supp. 2d 827, 831 (N.D. Ohio 2008); and *Schwartz v. CACH, LLC*, No. 13-12644-FDS, 2014 WL 298107, at *3 (D. Mass. Jan. 27, 2014)). Regardless of the distinction, the court observed that "the arbitration clause itself exempts small claims actions from arbitration." *Id.*

Next, in *Cox v. CA Holding Inc.*, because the plaintiffs "ha[d] not cited any case law indicating that a party to an arbitration provision waives the

provision by initiating a lawsuit involving different claims than the claims it seeks to arbitrate," the court held that the defendants were entitled to arbitrate the plaintiff's separate claims even after they had initiated a state court collection proceeding against him. No. 1:13-CV-01754-JMS, 2015 WL 631393, at *15 (S.D. Ind. Feb. 13, 2015).

As Defendants note, the same is true here; Cantu has not cited any case law "support[ing] her theory that a party waives the right to arbitrate by initiating a prior, independent lawsuit." ECF No. 21 at 3. Indeed, Cantu relies primarily on *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, ECF No. 20 at 4, where, nine months after removing the case to federal court and extensive discovery exchanges, the defendant "dropped a bombshell" by moving for arbitration as to the same claims in the same litigation. 50 F.3d 388, 389 (7th Cir. 1995). Conversely, Defendants explain that in this distinct litigation, their first—and only—action has been to move to compel arbitration. ECF No. 21 at 6.

Cantu's argument, however, aptly identifies the nuances in the case law. Unlike in *Kawaski*, CAC initiated the State Court Action, and Cantu argues that CAC's pursuit of a default judgment and attempt to dismiss the case with prejudice amounted to pursuit of resolution on the merits. Further, unlike in *Wheeler*, Cantu notes that CAC initiated a civil—non-small claims—lawsuit that *is* a covered dispute under the Arbitration Clause.

Countervailing these differences, nevertheless, is the fact that the two separate actions raise indisputably distinct claims. In the State Court Action, CAC sought a money judgment for the amount owed under the Contract. In the instant action, Cantu sues for allegedly bad faith, unconscionable, and or/illegal representations made by Defendants, as well

as deficiencies in the collection procedures used in the State Court Action. For this reason, Defendants contend that Cantu's argument regarding their attempt to resolve the State Court Action on its merits is a red herring. Specifically, they assert that it would not have mattered—for purposes of claim preclusion—if the State Court Action were dismissed with prejudice because the claims are different. ECF No. 21 at 4–5. Further, a ruling on Cantu's proposed counterclaims was never entered in the State Court Action, and Defendants do not argue that the claims are precluded. *Id.*

Ultimately, in the Court's view, the dispositive facts in *Wheeler* (and in *Cox* for that matter) were that the claims were both distinct and raised in separate litigations. *Wheeler*, 593 F. Supp. 3d at 884 ("[T]he small claims action filed by [defendant] against plaintiff was a distinct action, and does not operate as a waiver in the present case.") (citations omitted); *Cox*, 2015 WL 631393, at *15 (distinguishing two actions based on whether they brought the "same claims" or "different claims"). Similarly, in *Kawaski*, with respect at least to delay, the court specifically differentiated between the current and prior litigations. 660 F.3d at 995–96.

In another remarkably similar case, the defendant filed a state court action against the plaintiff seeking money owed under a contract, a default judgment, and attorneys' fees. *Fields v. Howe*, No. IP-01-1036-C-B/S, 2002 WL 418011, at *1 (S.D. Ind. Mar. 14, 2002). The plaintiff responded by filing a federal complaint "alleging that the defendants [creditor and attorney] violated state and federal law in their attempts to collect [her] . . . debt." *Id.* With respect to waiver, the court explained that "[t]he fact that the present action arose because of [creditor's] allegedly improper conduct in the . . . state court proceeding does not render this cause one and the same as [creditor's] state court case. The state court case is a collection action—a case

initiated by [creditor]; the federal court case is an action for alleged violation of federal and state law—a case initiated by [debtor]." *Id.* at *7. Further, the court reasoned that even if the actions were the same, the arbitration agreement addressed that issue by providing that "any new claim later asserted in a lawsuit is subject to arbitration . . . ." *Id.*

Similarly, in this case, the Arbitration Clause stipulates that either party may commence arbitration "before or after a lawsuit has been started over the Dispute or with respect to other Disputes or counterclaims brought later in the lawsuit." ECF No. 19-1 at 6. The Arbitration Clause also provides that "*any* Dispute" may be arbitrated. *Id.* (emphasis added); *see Schwartz*, 2014 WL 298107, at *3 (specifically where the contract provides that the parties can elect arbitration as to "any claim" instead of "all claims," and two separate actions are based on distinct claims, the waiver of the right to arbitrate in one action does not extend to the second action).

Thus, any gray area Cantu identifies is overcome by the overwhelming case law supporting Defendants' position and the dearth of case law supporting Cantu's position. To the extent there is any doubt, though the Court ultimately has none, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or *an allegation of waiver*, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24–25 (emphasis added).

3. **CONCLUSION**

For the reasons set forth above, the Court will grant Defendants' motion and compel Cantu to arbitrate. The Court will further grant Defendants' request to dismiss the action without prejudice because all of Cantu's claims are subject to arbitration. "[W]hen all of the claims raised in

Page 10 of 11
Case 2:23-cv-00520-JPS    Filed 08/25/23    Page 10 of 11    Document 22

a lawsuit are subject to arbitration," there is an exception to the general rule that the action be stayed, and dismissal may instead be appropriate. *Wheeler*, 593 F. Supp. 3d at 885 (quoting *Emps. Ins. of Wausau v. Cont'l Cas. Co.*, No. 15-CV-226-WMC, 2016 WL 632642, at *3 (W.D. Wis. Feb. 17, 2016)).

Accordingly,

**IT IS ORDERED** that Defendants Credit Acceptance Corporation and Kohn Law Firm S.C.'s motion to compel arbitration and dismiss the action without prejudice, ECF No. 17, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff Danika Cantu is compelled to arbitrate her claims in this action with Defendants Credit Acceptance Corporation and Kohn Law Firm S.C.; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED without prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 25th day of August, 2023.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge

Page 11 of 11
Case 2:23-cv-00520-JPS   Filed 08/25/23   Page 11 of 11   Document 22